```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ELIZABETH PRESUMEY,              :
                                 :
     Plaintiff,                  :
                                 :
     v.                          :      No. 3:15cv278(DFM)
                                 :
TOWN OF GREENWICH                :
BOARD OF EDUCATION,              :
                                 :
     Defendant.                  :
```

## RULING ON POST-VERDICT MOTIONS

The plaintiff, Elisabeth Presumey, brought this employment discrimination action against the Board of Education for the Town of Greenwich, Connecticut, alleging that it failed to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq. (Doc. #55.) After a day and half trial, a jury returned a verdict in the plaintiff's favor. The defendant challenges the jury's verdict as against the weight of the evidence and moves for judgment as a matter of law pursuant Fed. R. Civ. P. 50 or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59. (Doc. #74.) For the reasons set forth below, the motion is denied.

I. Standard of Review

    A. Motion for Judgment as a Matter of Law

Judgment as a matter of law pursuant to Rule 50 "is appropriate only if [the court] can conclude that, with credibility assessments made against the moving party and all inferences drawn

against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." Warren v. Pataki, 823 F.3d 125, 139 (2d Cir.), cert. denied sub nom. Brooks v. Pataki, --- U.S. ----, 137 S.Ct. 380, 196 L.Ed.2d 300 (2016) (alterations and internal quotation marks omitted). "A Rule 50 motion may only be granted if 'there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" Id. (internal quotation marks and citations omitted)

    B.   Motion for a New Trial

"A less stringent standard applies to a motion for a new trial." Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987). "When a party challenges a verdict under Fed. R. Civ. P. 59 on the ground that it was against the weight of the evidence, a court may grant the motion only if 'the verdict is (1) seriously erroneous or (2) a miscarriage of justice.'" Nielsen v. Van Leuven, 3:15cv1154(MPS), 2018 WL 488218, at *2 (D. Conn. 2018) (quoting Raedle v. Credit Agricole IndoSuez, 670 F.3d 411, 418 (2d Cir. 2012)). On a motion for a new trial pursuant to Rule 59, "the court may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." ING Global v. United Parcel

2

Serv. Oasis Supply Corp., 757 F.3d 92, 99 (2d Cir. 2014) (internal quotation marks omitted). However, trial judges "must exercise their ability to weigh credibility with caution and great restraint, as a judge should rarely disturb a jury's evaluation of a witness's credibility, and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." Raedle v. Credit Agricole IndoSuez, 670 F.3d 411, 418 (2d Cir. 2012) (internal quotation marks and citations omitted); see also ING Global, 757 F.3d at 99 ("[A] high degree of deference is accorded to the jury's evaluation of witness credibility, and . . . jury verdicts should be disturbed with great infrequency."); 11 Charles Alan Wright et al., Federal Practice and Procedure § 2806 (3rd ed. 2012)("The mere fact that the evidence is in conflict is not enough to set aside the verdict. Indeed the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury.")

Because the standard for a new trial is less stringent than for judgment as a matter of law, "[c]ourts address a new trial first when it is based on the same issue as the motion for judgment as a matter of law because evidence sufficient to withstand a new trial challenge will be sufficient to withstand a motion for judgment as a matter of law." Wilhite v. Shelby Cty. Gov't, No. 13-2143, 2015 WL 11017959, at *8 (W.D. Tenn. Dec. 28, 2015)

3

(quotation marks and citations omitted).

II. Background

From 2008 until 2012, the plaintiff was employed by the defendant as a professional assistant working with special education students. In November 2011, the plaintiff injured her left shoulder at work. She requested that she be put on "light duty" pursuant to her physician's instructions. The defendant responded that there was no light duty work assignment in that job class and ultimately terminated the plaintiff's employment on the grounds that she "ha[s] medical restrictions rendering [her] unable to perform the core functions of [her] job." (Pl's Ex. 36 Termination letter.) The plaintiff brought suit, alleging that the defendant failed to provide her a reasonable accommodation for her disability.

"Discrimination in violation of the ADA includes, inter alia, not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Sheng v. M&TBank Corp., 848 F.3d 78, 86 (2d Cir. 2017). To prevail on her failure-to-accommodate claim, the plaintiff was required to prove by a preponderance of the evidence that:

> (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of

[her] job, with or without reasonable accommodation;[1] and (4) [she] suffered adverse employment action because of [her] disability.[2]

McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).

The defendant stipulated to the first and fourth factors but contested the second and third factors. At trial, as here, the parties focused on the third element and specifically the essential functions of a professional assistant. As to this, the defendant argued that lifting, toileting and feeding students with special needs are essential functions of the job that the plaintiff could not perform. From this premise, the defendant asserted that the plaintiff was not qualified to perform the essential functions of her job, with or without reasonable accommodation. The plaintiff agreed that she could not perform these functions but claimed that they were not essential functions within the meaning of the statute

---

[1] "The third element of a reasonable accommodation claim raises three distinct issues — (1) what the essential functions of the job are; (2) whether an accommodation exists; and (3) whether the proffered accommodation is reasonable." Nazario v. Promed Pers. Servs. NY Inc., No. 15 CIV. 6989 (LGS), 2017 WL 2664202, at *4 (S.D.N.Y. June 19, 2017). "[D]etermination of the 'essential functions' of a particular position is important because 'an employer is not required to accommodate an individual with a disability by eliminating essential functions from the job.'" Young v. Cent. Square Cent. Sch. Dist., 213 F. Supp. 2d 202, 213 (N.D.N.Y. 2002) (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995)).

[2] As indicated, the plaintiff brought claims under the ADA and CFEPA. "While CFEPA defines disability more broadly than the ADA, the ADA and CFEPA apply the same standards for reasonable accommodation." Green v. Cellco P'ship, 218 F. Supp. 3d 157, 167 (D. Conn. 2016).

and that she could perform her job with reasonable accommodation, that is, light duty. The jury agreed, finding that the plaintiff had proven by a preponderance of the evidence that (1) as to the second factor, the plaintiff was disabled within the meaning of the CFEPA and ADA; and (2) as to the third factor, she could perform the essential functions of her job with or without reasonable accommodation. (Doc. #71, Verdict Form.)

III. Discussion

    A.    Essential Functions

In the pending motion, the defendant argues that the jury wrongly concluded that the plaintiff could perform the essential functions of her job. The defendant asserts there is "no question that lifting, toileting and feeding students with special needs are essential functions of the job"; it is undisputed that the plaintiff was unable to perform these functions; and the plaintiff's proposed accommodation of "light duty" was not reasonable because an employer is not required to eliminate functions from a job. (Doc. #75 at 4.)

Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n).

> Determining the essential functions of a position requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice. . . . Relevant factors include, among other things, the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of

past employees in the position, and the work experience of current employees in similar positions.

Snowden v. Trustees of Columbia Univ., 612 F. App'x 7, 9 (2d Cir. 2015). "[C]onsiderable deference" is given "to an employer's judgment regarding what functions are essential for service in a particular position." Stevens v. Rite Aid Corp., 851 F.3d 224, 229 (2d Cir.), cert. denied, 138 S. Ct. 359 (2017) (quotation marks and citations omitted.) However, "it is only one of the many factors a court must consider." Lewis v. Livingston Cty. Ctr. for Nursing & Rehab., 30 F. Supp. 3d 196, 208 (W.D.N.Y. 2014). "[N]o one listed factor will be dispositive." Stevens, 851 F.3d at 229. "Courts must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." Id. See Lewis, 30 F. Supp. 3d at 209 (courts must make an inquiry "into whether the employer actually requires all employees in the particular position to perform the allegedly essential function.") "[U]ltimately, . . . whether a task constitutes an essential function depends on the totality of the circumstances." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004). The jury was instructed on all these principles. (Doc. #70.)

In support of its argument that lifting, toileting and feeding students were essential functions of the job of a professional assistant, the defendant points to the testimony of Regina Williams and Erica Mahoney, Human Resource personnel; William McCormick, a

7

union representative; and Eileen Dailey and Gary Pishkur, who were employed by the defendant as professional assistants, all of whom testified that lifting and toileting were essential functions of the job of a professional assistant and that light duty did not exist and was not offered to any professional assistants. The defendant also cites to documentary evidence introduced at trial including the job description and handbook which detailed the many duties of a professional assistant, including "provid[ing] for the physical needs of students including lifting and toileting, us[ing] mechanical lift equipment and transfer aids as needed including the ability to transfer in wheelchairs." (Def's Ex. 11, 12.)

However, the defendant's evidence in support of its argument as to the essential functions of the job was not uncontroverted. The plaintiff testified that the students with whom professional assistants work have a range of disabilities. (Tr. 5/16/17 at 36.) Not all students required lifting. (Id.) Some required only classroom support. Significantly, the plaintiff testified that the defendant did not require all professional assistants to lift and toilet students - these functions were waived for certain professional assistants. (Tr. 5/16/17 at 36.) Specifically, both the plaintiff and other professional assistants were given "light duty," that is, assigned to students who did not require lifting or being pushed in a wheelchair. (Tr. 5/16/17 at 36.)

The plaintiff testified that on at least two occasions, she

8

was placed on light duty as a result of injuries she sustained on the job. In 2009, she injured her hip after lifting a student. (Tr. 5/16/17 at 34.) The defendant sent her to a particular clinic to which it referred all its employees. (Tr. 5/16/17 at 35.) The doctor determined that the plaintiff should be put on light duty and wrote a report to that effect. (Tr. 5/16/17 at 36-37.) The clinic sent a copy of the doctor's report to the principal of the school where the plaintiff was working and to Human Resources. (Tr. 5/16/17 at 37.) When the plaintiff returned to work, the defendant placed her on light duty, assigning her to students who needed only classroom instructional support. (Tr. 5/16/17 at 36.) The plaintiff remained on light duty for some months. (Tr. 5/16/17 at 38.)

In 2011, she sustained another on-the-job injury and was seen at the clinic. When she returned to work, the defendant again placed her on light duty. (Tr. 5/16/17 at 47.)

The plaintiff testified that there were other professional assistants who were not required to lift students. (Tr. 5/16/17 at 59; pl's ex. 7.) One co-worker named Eileen Dailey, who had the same job as the plaintiff, was not required to do so. (Tr. 5/16/17 at 59.) The plaintiff testified that Ms. Dailey's left arm and leg were affected by paralysis and that as a result, she was on "permanent light duty" because "you cannot push a wheelchair with one hand . . . ." (Tr. 5/16/17 at 59.)

9

The plaintiff called Ms. Dailey as a witness in her case-in-chief. Ms. Dailey testified that she had "limited use of her left arm" and "foot drop," a gait abnormality, as to her left foot. (Tr. 5/16/17 at 99-100.) She denied having any substantial limitations of her arm, asserting that it was a "useful arm" and that only her "fine motor skills" were affected. (Tr. 5/16/17 at 101.) Ms. Dailey testified that she could lift and toilet students, even heavy students. She said that she was not on light duty and did not know of any professional assistants who were on light duty. (Tr. 5/16/17 at 101.)

As the plaintiff argues, the jury was permitted to assess Ms. Dailey's testimony in light of their own observations of her. During summation, plaintiff's counsel urged the jury to credit their observations of Ms. Dailey's physical infirmities, exhorting that "you saw with your own eyes what the truth is about that lady." (Tr. 5/17/17 at 50.) Counsel underscored that Ms. Dailey had an obvious foot drop, clearly walked with difficulty, and did not move her left arm at all. (Tr. 5/17/17 at 48-50.)

Even under the more relaxed review standards of a motion for new trial pursuant to Rule 59, the jury's result was neither "seriously erroneous" nor "a miscarriage of justice." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417–18 (2d Cir. 2012). On this record, the jury reasonably could have concluded that lifting and toileting students were not essential functions of the job.

10

The resolution of these issues at trial was a quintessential jury credibility issue. Although the defendant urges that the plaintiff's testimony was not credible (doc. #75 at 5), on a motion for a new trial, "the jury is owed substantial deference in making credibility assessments." McKinney v. Cent. Hudson Gas & Elec. Corp., 632 F. App'x 37, 38 (2d Cir. 2016). See Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012) ("Where the resolution of the issues depended on an assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial.")

This case is distinguishable from Stevens v. Rite Aid Corp., 851 F.3d 224 (2d Cir. 2017), upon which the defendant heavily relies. In that case, the plaintiff pharmacist suffered from "trypanophobia," fear of needles. He was terminated for failing to comply with a company policy requiring pharmacists to administer flu vaccines. He brought suit alleging violation of the ADA. After a jury found in his favor, the district court denied the defendant's post-trial motion for judgment as a matter of law. On appeal, the Second Circuit reversed on the grounds that the evidence "compel[ed] a finding that immunization injections were an essential job requirement for Rite Aid pharmacists." Id. at 229.

This record, however, is different. The evidence adduced at trial does not "compel" a finding that lifting and toileting students were essential functions. To the contrary, there was

11

evidence from which a jury could reasonably conclude that these tasks were not essential functions because, in practice, the defendant did not require all professional assistant to perform them.

B. <u>McDonnell Douglas</u>

The defendant next argues that even assuming the plaintiff demonstrated that she could perform the essential functions of her job, the defendant is nonetheless entitled to relief because the plaintiff "has not sustained her <u>McDonnell Douglas</u> burden" in that "she has not even attempted to prove that the defendant was motivated by prohibited discrimination."[3]  (Doc. #75 at 9.)

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." <u>McBride v. BIC Consumer Prod. Mfg. Co.</u>, 583 F.3d 92, 96 (2d Cir. 2009).  "A plaintiff must establish a prima facie case; the

---

[3]The court notes that insofar as the defendant seeks judgment as a matter of law, this argument was not made in the defendant's Rule 50(a) motion.  (Tr. 5/16/17 at 127.)  In a post-trial Rule 50(b) motion, "the movant may not add grounds that were not raised in the previous motion." <u>Lee v. Onesource Info. Servs., Inc.</u>, No. 3:04cv2143(AWT), 2009 WL 10687861, at *1 (D. Conn. Mar. 4, 2009). <u>See</u> <u>Tolbert v. Queens Coll.</u>, 242 F.3d 58, 70 (2d Cir. 2001)(A post-trial motion "is limited to those grounds that were 'specifically raised in the prior motion for [JMOL]'; the movant is not permitted to add new grounds after trial.")(quoting <u>McCardle v. Haddad</u>, 131 F.3d 43, 51 (2d Cir. 1997)). The court nonetheless addresses the argument because it is also the basis for the defendant's request for a new trial pursuant to Rule 59.

12

employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Id.

The defendant's argument is inapposite. Under the circumstances of this case, as in the case of McMillan v. City of New York, 711 F.3d 120, 129 (2d Cir. 2013), the burden-shifting analytical framework — i.e., asking whether the defendant could show a nondiscriminatory reason for the complained-of conduct, and whether the plaintiff could, in turn, demonstrate that any proffered reason was pretextual — is inapplicable. As the Second Circuit explained:

> While the burden-shifting McDonnell Douglas analysis is useful in most discrimination cases, it is not helpful here. When the reason given by the employer for the adverse employment action is unrelated to the employee's disability, the McDonnell Douglas approach can be used to weed out non-viable claims of discrimination based on circumstantial evidence. When the parties agree that the employer complains of conduct that is the direct result of the employee's disability, however, there is no need to evaluate whether the employer's adverse employment action made in response to that conduct is pretextual. . . . [I]nstead, [the plaintiff] need only demonstrate that, with reasonable accommodations, he could have performed the essential functions of h[er] job.

McMillan, 711 F.3d at 129.

Here, it is undisputed that the plaintiff was unable to lift and toilet students because of her disability and that the defendant terminated her employment as a result. The defendant did not dispute that the plaintiff suffered an "adverse employment

13

action because of her disability." (Jury Charge, tr. 5/17/17 at 75.) Therefore, as in McMillan, the plaintiff "need only demonstrate that, with reasonable accommodations, [s]he could have performed the essential functions of h[er] job." McMillan, 711 F.3d at 129, which the jury reasonably concluded that she proved by a preponderance of the evidence.

III. Conclusion

For these reasons, the defendant's motion for judgment as a matter of law or in the alternative, motion for a new trial (doc. #74) is denied.[4]

SO ORDERED at Hartford, Connecticut this 7th day of February, 2018.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

---

[4]"Since the standard for granting a new trial is lower than that for entering judgment as a matter of law, it is clear that if a new trial is not warranted, entry of judgment as a matter of law would be improper." Markovich v. Bell Helicopter Textron, Inc., 805 F. Supp. 1231, 1235 (E.D. Pa.), aff'd, 977 F.2d 568 (3d Cir. 1992). Accordingly, because I conclude that a new trial is not warranted, I also decline to enter judgment as a matter of law.