UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH PRESUMEY,          :
                             :
     Plaintiff,              :
                             :
     v.                      :     No. 3:15cv278(DFM)
                             :
TOWN OF GREENWICH            :
BOARD OF EDUCATION,          :
                             :
     Defendant.              :

## MEMORANDUM OF DECISION

The plaintiff, Elisabeth Presumey, brought this action against her former employer, the Board of Education for the Town of Greenwich, Connecticut, alleging that it failed to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq. (Doc. #55.) The parties agreed on the record in open court to waive a jury claim as to damages and instead have the court determine any and all monetary damages. (Doc. #77 at 140, 143.) After a jury returned a verdict in the plaintiff's favor as to liability, the court held an evidentiary hearing on May 3, 2018 on damages and attorney's fees. The following are the court's findings of fact and conclusions of law.

I.   Procedural Background

From August 2008 until December 2012, the plaintiff was employed by the defendant as a professional assistant working with special education students. In November 2011, she injured her

shoulder on the job and thereafter requested that she be placed on light duty pursuant to her physician's instructions. The defendant responded that it could not accommodate the plaintiff because there was no light duty work assignment in her job class. The plaintiff was placed on leave. The defendant terminated the plaintiff's employment effective December 3, 2012 on the grounds that she "ha[s] medical restrictions rendering [her] unable to perform the core functions of [her] job." (Pl's Ex. 36, Termination letter.) The plaintiff brought suit, alleging that the defendant failed to provide her a reasonable accommodation for her disability.[1]

After the jury returned a verdict in favor of the plaintiff, the court denied the defendant's post-trial motions for judgment as a matter of law and for a new trial. (Doc. #82.) An evidentiary hearing on damages was scheduled. (Doc. #83.) The court ordered the parties to file a joint pre-hearing memorandum setting forth the plaintiff's damages analysis; the parties' proposed findings of fact and conclusions of law; the parties' witnesses and exhibits; and an affidavit regarding plaintiff's request for attorney's fees. (Doc. #83.) After the evidentiary hearing, the parties filed post-hearing memoranda. (Doc. ##114, 115.)

---

[1] Initially the plaintiff also alleged race, color and national origin discrimination and named her union as a defendant in addition to her employer. She subsequently "stipulate[d]" to summary judgment in favor of the union. (Doc. #44.) As to the Board of Education, the plaintiff withdrew all claims except disability discrimination. (Doc. #55.)

2

II. Discussion

The plaintiff seeks back pay, front pay, compensatory damages, and attorney's fees.[2]

A. Back Pay

The plaintiff requests an award of back pay from December 3, 2012 through June 2018, the anticipated date of judgment, totaling $162,241.92 comprised of wages during the school year; wages from summer school; and contributions to her Health Savings Account. (Doc. #114 at 4-5.)

"An award of backpay is the rule, not the exception." Carrero v. New York City Hous. Auth., 890 F.2d 569, 580 (2d Cir. 1989). The purpose of back pay is to make a plaintiff whole, that is, to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993). "This award should therefore consist of lost salary, including anticipated raises, and fringe benefits." Id. See Bergerson v. New York State Office of Mental Health, 652 F.3d 277, 287 (2d Cir. 2011)("[A]n award of backpay includes what the employee himself would have earned had he not been

---

[2] "The ADA provides that a successful plaintiff shall have available the same remedies that would be available to a plaintiff pursuant to Title VII." Tse v. New York Univ., 190 F. Supp. 3d 366, 371 (S.D.N.Y. 2016). See Grzelewski v. M&C Hotel Interests, Inc., No. 17CV884V, 2018 WL 474795, at *4 (W.D.N.Y. Jan. 2, 2018) ("The ADA incorporates the powers and remedies of Title VII, see 42 U.S.C. §§ 12117(a), 12111(7) (citing 'powers, remedies, and procedures' of 42 U.S.C. §§ 2000e-5(f)(1), (3), 2000e(g), (h) as the powers, remedies and procedures under the ADA).")

discharged.")

    B.  Mitigation

    The defendant argues that the plaintiff should be awarded "only a nominal back pay amount" because she "failed to mitigate her damages."  (Doc. #107 at 8.)  The defendant challenges the efficacy of the plaintiff's search and also asserts that in light of the duration of the plaintiff's employment with prior employers, she would not have remained with the defendant for this full period of time.

    A "prevailing plaintiff in an employment discrimination action has a duty to mitigate h[er] damages by exercising reasonable diligence in seeking substitute employment that is substantially similar to h[er] former employment or risk having the amount of any damages awarded reduced by the amount that could have been earned." Evarts v. Quinnipiac Univ., No. 3:15CV1509(CSH), 2017 WL 6453396, at *3 (D. Conn. Dec. 10, 2017).  See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998)("Victims of employment discrimination are required to mitigate their damages.")  That said, "[t]he wrongfully terminated employee's duty to mitigate is minimal." Ramey v. Dist. 141, Int'l Assoc. of Machinists & Aerospace Workers, No. 99-CV-4341(BMC)(RML), 2010 WL 3619708, at *4 (E.D.N.Y. Sept. 10, 2010). Although it is the plaintiff's duty to mitigate, "[d]efendant, as plaintiff's former employer, bears the burden of demonstrating that [the] plaintiff has failed to satisfy

4

the duty to mitigate." Bailey v. Grocery Haulers, Inc., No. 3:15CV1835(JBA), 2017 WL 4536111, at *8 (D. Conn. Oct. 11, 2017). In determining whether the employer has met that burden, the court asks whether the plaintiff "use[d] reasonable diligence in finding other suitable employment, which need not be comparable to their previous positions." Greenway, 143 F.3d at 53 (internal quotation marks omitted). "The ultimate question is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 695 (2d Cir. 1998) (internal quotation marks omitted). "This obligation is not onerous and does not require her to be successful." Id.

The plaintiff testified that after her termination in December 2012, she applied for "anything" and "everything" she could find. (Tr. 5/3/18 at 30.) She searched for jobs online and in the classifieds. (Tr. 5/3/18 at 30.) She applied online and sent out resumes and cover letters. It is undisputed that in June 2016, she began receiving Social Security Disability benefits and did not look for employment after that. (Doc. #114 at 2.)

The court finds that the plaintiff acted reasonably in attempting to gain employment after her termination until June 2016. Although the defendant asserts that the plaintiff "fail[ed] to mitigate by not finding a single job of any kind from December 2012 to June 2016" (doc. #115 at 11), "[a] backpay claimant's duty

5

to mitigate her damages by using reasonable diligence in finding other suitable employment is not onerous, and does not require her to be successful in mitigation. . . . Any doubts related to such proof are to be resolved against the employer." G & T Terminal Packaging Co. Inc. v. N.L.R.B., 459 F. App'x 19, 23 (2d Cir. 2012). See Vera v. Alstom Powers, Inc., 189 F. Supp.3d 360, 385 (D. Conn. 2016) ("[Defendant] cites no authority, and the Court found none, standing for the proposition that a years-long failure to find comparable employment compels a finding of a failure to search reasonably.")

That said, in June 2016 the plaintiff began collecting disability benefits and stopped looking for work. (Doc. #114 at 2.) As a result, her back pay damages are cut off at this juncture. See Dominic v. Consolidated Edison Co. of New York, Inc., 822 F.2d 1249, 1258 (2d Cir. 1987) ("[the plaintiff's] back-pay award would have been cut off or reduced at the time of his failure to mitigate"); DeMarco v. Ben Krupinski Gen. Contractor, Inc., No. 12-CV-0573 (SJF)(ARL), 2014 WL 3531276, at *14 (E.D.N.Y. July 14, 2014)(plaintiff's back pay damages cutoff as of November 2011 where "plaintiff made no reasonable efforts to seek comparable employment after [that point in time]"); Hopkins v. New England Health Care Employees Welfare Fund, 985 F. Supp. 2d 240, 262 (D. Conn. 2013) (a plaintiff must "use reasonable diligence in finding other suitable employment." . . . In no way

can social security . . . payments be construed to be 'employment.'")

The plaintiff is entitled to $102,795.01 as follows:

| School year | Wages[3] |
|---|---|
| Dec 2012-2013 | $17,491.91 |
| 2013-2014 | $27,984.15 |
| 2014-2015 | $27,984.15 |
| 2015-2016 | $29,334.80 |
| | $102,795.01 |

C.  Summer School

The plaintiff also seeks summer school wages. The plaintiff did not claim these damages in the damage analysis set forth in her pre-hearing submission. See doc. #107. For the first time at her evidentiary hearing, she testified that in addition to her normal schedule during the school year, she worked for the defendant "every summer" for 6 weeks for which she was paid $500 per week.[4] (Tr. 5/3/18 at 23.) The defendant argues that the court should not award any damages for work at summer school because the plaintiff's testimony is "false." (Doc. #115 at 5.)

---

[3]The parties stipulated to the amount of wages per school year, which are set forth in plaintiff's Exhibit 1 which was admitted by agreement. (Tr. 5/3/18 at 15; see also doc. #115 at 4.)

[4]The plaintiff's assertion in her post-hearing submission that she "would have earned $5000 per year" from working at the defendant's summer school program is unsupported by her testimony. (Doc. #114 at 4.)

7

"In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. . . . [T]he [factfinder] is not allowed to base its award on speculation or guesswork." Bargham v. Wal-Mart Stores, Inc., No. 3:12CV01361(VAB), 2017 WL 3736702, at *5 (D. Conn. Aug. 30. 2017) (internal quotation mark and citation omitted). See also Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274, 308 (S.D.N.Y. 2008) ("[I]t is plaintiff's burden to present a non-speculative basis for determining economic damages.")

The court finds that the plaintiff has not met her burden. In contrast to her claim for wages during the school academic year, the plaintiff did not offer any documentation in support of her wage claim for summer school. Furthermore, during the liability portion of the trial, she never mentioned that she worked during the summer even though it would have been relevant.[5] In addition, the plaintiff was on leave during the summer of 2012 due to her injury so could not have worked at summer school. (Pl's Ex. 32.) On this record, the plaintiff has failed to establish an entitlement to lost wages from working at summer school.

---

[5]During trial, the plaintiff testified that the defendant previously had accommodated her by putting her on light duty. She said that the defendant put her on light duty in May 2009 through "the end of the school year" in 2009 and that she "was still on light duty" when she "started" that fall. (Tr. 5/16/17 at 37.)

D. <u>Unemployment Compensation</u>

The defendant contends that the court should deduct the plaintiff's unemployment compensation from the plaintiff's back pay award.

After her termination, the plaintiff received unemployment compensation totaling $12,274. (Doc. #114 at 4; doc. #115 at 4.) Of this amount, the defendant paid the Connecticut Department of Labor $6578 toward the plaintiff's unemployment compensation. (Def's ex. 601.)

"[T]he decision whether or not to deduct unemployment benefits from a Title VII back pay award rests in the sound discretion of the district court." <u>Dailey v. Societe Generale</u>, 108 F.3d 451, 460 (2d Cir. 1997). Many courts in this Circuit have exercised their discretion to decline to deduct unemployment compensation from calculations of back pay. <u>See</u> <u>Tse v. New York Univ.</u>, 190 F. Supp. 3d 366, 373 (S.D.N.Y. 2016) (collecting cases). However, "where the payment of unemployment benefits is not from a 'collateral' source such as a state-run unemployment insurance fund, but instead is paid directly (or 'effectively') by the employer itself, several courts have declined to apply the collateral source rule." <u>Sass v. MTA Bus Co.</u>, 6 F. Supp. 3d 238, 255-56 (E.D.N.Y. 2014)(collecting cases). <u>See also</u> <u>Wat Bey v. City of New York</u>, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *24 (S.D.N.Y. Sept. 4, 2013) ("If the defendant was the source of the collateral benefit, however, courts

9

have treated the collateral source payment as an element of damages that has already been paid."), aff'd sub nom. Rivera v. City of New York, 594 F. App'x 2 (2d Cir. 2014); Norris v. New York City Coll. of Tech., No. 07-CV-853, 2009 WL 3841970, at *1-2 (E.D.N.Y. Nov. 18, 2009) ("the rationale for the collateral source rule disappears when the employer itself is the source of the benefit — that is, where the source of the benefit is not 'collateral.'")

Consistent with this authority, of the $12,274 in unemployment benefits the plaintiff received, $6578 is offset as damages that the defendant has already paid.[6] The court declines to offset the back pay award by the remaining amount of $5696 in unemployment compensation. See Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 258 (2d Cir. 1991)("[w]hile collateral source payments do represent an additional benefit to the plaintiff, . . . 'as between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer'"); Becerril v. E. Bronx NAACP Child Dev. Ctr., No. 08 CIV. 10283(PAC)(KNF), 2009 WL 2611950, at *4 (S.D.N.Y. Aug. 18, 2009)("Since the [defendant] terminated [the plaintiff's] employment wrongfully, it should not receive the benefit of having

---

[6]The defendant, without explanation, deducts both $12,274 and $6578 from the back pay award. See doc. #115 at 4 fn 3. The testimony at the hearing indicates, however, that the total amount of unemployment benefits paid to the plaintiff was $12,274. (Tr. 5/3/18 at 24, 64).

10

the plaintiff's unemployment compensation deducted from her total back pay award.")

E. Health Savings Account Contributions

The plaintiff seeks to recover contributions to her Health Savings Account ("HSA") as of 2014. (Doc. #107 at 2.) The plaintiff testified that the defendant contributed $2500 per year to her HSA. (Doc. #112, tr. 5/3/18 at 25.) The defendant does not dispute this claimed element of damages. See doc. #115 at 4. The plaintiff is awarded $7500 for HSA contributions.[7]

F. Front Pay

The plaintiff requests an award of front pay in the amount of $390,168. (Doc. #114 at 6.) The plaintiff asserts that she is capable of performing her job with an accommodation and therefore "the defendant remains obligated to compensate her for her lost wages for the entirety of her prospective working life." (Doc. #114 at 2.) She maintains that had the defendant not terminated her employment, she would have "continue[d] working to the end of her life" and her "projected life expectancy," according to the Social Security Administration life table, is 24 years. (Pl's ex. 3; doc. #114 at 5-6.)

Front pay is a remedy "awarded at the discretion of a district

---

[7]$2500 per year for the years of 2014, 2015 and 2016.

11

court where reinstatement is inappropriate[8] and the plaintiff has been unable to find another job." Bergerson v. New York State Office of Mental Health, 652 F.3d 277, 286 (2d Cir. 2011). "An award of front pay is discretionary, and if a district court makes a nonerroneous 'specific finding' that a plaintiff has already been made whole, no abuse of discretion can be found in denying front pay." Id. at 287–88.

"As with an award of back pay, a plaintiff seeking an award of front pay 'has the duty to exercise reasonable diligence in mitigating damages by seeking alternative employment.'" DeMarco v. Ben Krupinski Gen. Contractor, Inc., No. 12-CV-0573, 2014 WL 3531276, at *16 (E.D.N.Y. July 14, 2014) (quoting Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1182 (2d Cir. 1996)). A "failure to mitigate deprives [the plaintiff] of any entitlement to receive an award for front pay . . . ." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998). Here, because the plaintiff stopped trying to find any employment after June 2016 when she began collecting Social Security Disability benefits, her request for front pay is foreclosed. See Sharkey v. J.P. Morgan Chase & Co., No. 10CV3824 (DLC), 2018 WL 1229831, at *13 (S.D.N.Y. Mar. 5, 2018) (because plaintiff "removed herself from the workforce, front pay is . . . unavailable."); Clark v. Gotham Lasik, PLLC, No. 11

---

[8]The plaintiff has not requested, nor has the defendant offered, reinstatement.

CIV. 01307, 2013 WL 4437220, at *5 (S.D.N.Y. Aug. 20, 2013)(plaintiff not entitled to front pay where she "proffered no evidence" of attempts to secure employment.)

G. Compensatory Damages

The plaintiff seeks an award of compensatory damages of $165,000[9] for emotional distress. (Doc. #114 at 6.)

At the time she was terminated, the plaintiff was a single parent with a minor child. (Tr. 5/3/18 at 25.) Her pay from the defendant "wasn't much but it was something." (Tr. 5/3/18 at 26.) After she lost her job, the plaintiff could not find another job and subsisted on unemployment compensation. (Tr. 5/3/18 at 26.) Those benefits ended after a year. The plaintiff credibly testified that she was frightened, distraught, and did not know how she would "survive." (Tr. 5/3/18 at 27.) She "struggled so hard to feed" her child that she had to obtain groceries from a food pantry. (Tr. 5/3/18 at 26.) She went every week. (Tr. 5/3/18 at 27.) Even so, she had "so little" food that she limited her own eating to provide enough food for her daughter. (Tr. 5/3/18 at 27.) The plaintiff often cried herself to sleep and was prescribed medication for depression by her family doctor. (Tr. 5/3/18 at 27, 58.)

The ADA permits a prevailing plaintiff to recover compensatory

---

[9]The plaintiff argues that the court should award as compensatory damages 30% of her economic damages, which she calculates as $552,409.92.

13

damages to redress "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). "[C]ompensatory damages are 'intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct . . . .'" Anderson Grp., LLC v. City of Saratoga Springs, 805 F.3d 34, 52 (2d Cir. 2015)(quoting Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (2001)). "A compensatory award for emotional distress in a discrimination action may be based on testimonial evidence alone and is not preconditioned on whether [the plaintiff] underwent treatment, psychiatric or otherwise." MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012).

"'Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant, and egregious.'" Barham v. Wal-Mart Stores, Inc., No. 3:12CV1361(VAB), 2017 WL 3736702, at *2 (D. Conn. Aug. 30, 2017)(quoting Graham v. City of N.Y., 128 F. Supp. 3d 681, 714 (E.D.N.Y. 2015)). "In 'garden variety' emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." Barham, 2017 WL 3736702, at *2 (quoting Olsen v. Cty. of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y.

14

2009)). "Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." Id. (internal quotation marks and alteration omitted). See MacCluskey v. Univ. of Connecticut Health Ctr., No. 3:13CV01408(MPS), 2014 WL 7404565, at *2 (D. Conn. Oct. 20, 2014) ("Emotional distress arising from discrimination — which is what [plaintiff] is claiming — is, on its own, generally a garden variety form of emotional distress.") "In contrast, significant emotional distress claims are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." Barham v. Wal-Mart Stores, Inc., No. 3:12CV1361(VAB), 2017 WL 3736702, at *3 (D. Conn. Aug. 30, 2017) (internal quotation marks and citation omitted). "Egregious" emotional distress claims generally involve "either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." Id. (internal quotation marks omitted.)

This case falls within the first category of emotional distress awards, that is, "garden-variety" distress. "In the Second Circuit, 'garden variety emotional distress claims generally merit $30,000 to $125,000 awards.'" Id. at *4 (quoting MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 561 (S.D.N.Y. 2012)).

15

The defendant argues that "if the court were to make an award to the plaintiff" for compensatory damages, it should be "a nominal award of $1.00" because the plaintiff's testimony concerning her "claimed emotional distress lack[ed] credibility." (Doc. #115 at 9, 11.) The defendant goes so far as to suggest that the plaintiff "decided she never needed to work again" and chose to support herself with "social benefits" such as section 8 housing assistance, Medicaid and Social Security Disability benefits. (Doc. #115 at 10.)

The court disagrees. Contrary to the defendant's suggestion, the plaintiff suffered emotional distress as a result of the defendant's termination of her job. As evidenced by her testimony and demeanor during the hearing, she was a proud woman devastated by the loss of her job. She testified with sincere conviction that she suffered great anguish about providing for her child. The plaintiff spoke credibly about her desperation, anxiety and humiliation. She was prescribed medication to treat her symptoms. Taken as a whole, the plaintiff adduced evidence that supports a damages award of $75,000 for emotional distress.

F. Attorney's Fees

As a final matter, the plaintiff seeks $36,950 in attorney's fees, reflecting 73.9 hours at $500/hour.[10] (Doc. #113.) In support, the plaintiff submitted counsel's billing statement and

---

[10] The plaintiff does not seek costs.

affidavit. (Doc. #114.)

The ADA and the CFEPA allow a prevailing party in an action to recover reasonable attorney's fees. See 42 U.S.C. § 12205; Conn. Gen. Stat. § 46a-104.

"Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). "[T]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations marks and citations omitted.) "'[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'" Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014) (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." Feltzin v. Ciampa Whitepoint LLC, No. 15-CV-2279 (JBW)(PK), 2017 WL 570761, at *1 (E.D.N.Y. Feb. 13, 2017).

1. <u>Hourly Rate</u>

To determine a reasonable hourly rate, the district court considers "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008).

Plaintiff's counsel is a veteran litigator, having practiced law for 50 years with extensive experience in "civil rights litigation of all kinds, including police misconduct and employment discrimination." (Doc. #107-1, Williams Aff. ¶2.) His requested rate of $500 hour, which defendant does not contest, is reasonable. <u>See</u>, <u>e.g.</u>, <u>Goff v. Chivers</u>, No. 3:15CV722(SALM), 2017 WL 2896022, at *2 (D. Conn. July 7, 2017) (awarding $500 rate to plaintiff's counsel).

2. <u>Hours Billed</u>

Having determined a reasonable hourly rate, the court next determines the reasonable number of hours expended. According to his affidavit, plaintiff's counsel billed 73.9 hours from November 2015 through May 16, 2018. (Doc. #113.)

The party seeking attorney's fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." Custodio v. Am. Chain Link & Const., Inc., No. 06-CV-7148, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)). "In determining the number of hours reasonably expended . . . [a] district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998). The court "looks to 'its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)(quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)).

The defendant argues that time spent on the claims against the union co-defendant (see footnote 1) should not be compensated.[11]

---

[11] The defendant raised this argument during the evidentiary hearing. In response, plaintiff's counsel agreed on the record to withdraw an entry on May 16, 2016 for 2 hours and another on May 17 for .3 hours. (Tr. 5/3/18 at 84.) After the hearing, the plaintiff submitted a supplemental affidavit in which these entries

19

It states that plaintiff's counsel billed 11.7 hours from November 2015 through April 2016 while the union remained as a defendant. The defendant posits that the court should deduct half this time (5.9 hours) because "during this time period there were two defendants." (Doc. #115 at 8.)

The court is unpersuaded. After careful review of counsel's billing statement, the court cannot discern time attributable to work on claims against the union and plaintiff's counsel represents that he has omitted any charges for time expended on claims against the union. (Doc. #114 at 7.) The court finds that the time spent litigating this case is reasonable. Plaintiff is awarded attorney's fees of $36,950.

III. Conclusion

For these reasons, the plaintiff is awarded back pay of $103,717.01[12], compensatory damages of $75,000 and attorney's fees of $36,950.

SO ORDERED at Hartford, Connecticut this 5th day of June, 2018.

```
            /s/
    Donna F. Martinez
    United States Magistrate Judge
```

---

were omitted. See doc. #113.

[12] $102,795.01 (wages until June 2016) + $7500 (HSA contributions) = $110,295.01.
$110,295.01 - $6578 (defendant's unemployment contribution) = $103,717.01.